IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:23-CV-30-D

| | | |
|---|---|---|
| RICHARD WRIGHT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **ORDER** |
| v. | ) | |
| | ) | |
| HERTFORD COUNTY | ) | |
| BOARD OF EDUCATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

On April 26, 2023, Richard Wright ("Richard Wright" or "plaintiff") filed a complaint against the Hertford County Board of Education ("Board"), William Wright ("Superintendent Wright"), and Crystal Phillips ("Phillips") (collectively "defendants") alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq., 42 U.S.C. § 1981, and the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601 et seq. [D.E. 1]. On July 14, 2023, defendants moved to dismiss the complaint for failure to state a claim upon which relief can be granted [D.E. 15] and filed a memorandum in support [D.E. 16]. On August 9, 2023, Richard Wright responded in opposition [D.E. 18]. On August 23, 2023, defendants replied [D.E. 19]. As explained below, the court grants defendants' motion in part and denies the motion in part.

I.

In August 2016, Richard Wright worked as one of two Assistant Principals for Hertford Middle School. See Compl. [D.E. 1] ¶ 10. Richard Wright is a white Caucasian male. See id. at ¶ 48. The Board operates a public school system in Hertford County, North Carolina and is headquartered in Winton, North Carolina. See id. at ¶ 3. Superintendent Wright was the

Superintendent of the Board at all times relevant in this action. See id. at ¶ 4. Phillips was the Principal at Hertford Middle School at all times relevant in this action. See id. at ¶ 5.

Richard Wright alleges that from at least 2018 through 2021, Superintendent Wright and Phillips engaged in a general pattern of race discrimination against white employees, including against Richard Wright. See id. at ¶¶ 45–46. Richard Wright alleges that during his employment, Phillips sabotaged his ability to meet the school's legitimate expectations, including refusing to provide functional equipment and manuals for school testing, interfering with his time-sensitive duties, and assigning him significantly more responsibilities than the other Assistant Principal. See id. at ¶ 15. Richard Wright alleges that the mistreatment became so intolerable that he met with Superintendent Wright in May 2019 and complained about racial harassment, race discrimination, and sex discrimination. See id. at ¶ 17. Richard Wright alleges that Superintendent Wright took no remedial action and that Phillips's mistreatment worsened. See id. at ¶ 18. This mistreatment allegedly included Phillips reprimanding Richard Wright for allowing testing proctors to use cell phones despite the lack of functioning equipment, not promoting him for an elementary school principal job within the district, and informing him that he would be reported for failing to properly supervise testing operations. See id.

On May 25, 2021, Richard Wright began to suffer a serious medical condition that prevented him from performing one or more of his required duties. See id. at ¶ 21. On May 26, 2021, Richard Wright went to a doctor, who placed him on FMLA leave for a minimum of ten days for the condition. See id. at ¶ 26. During and after the medical episode, Richard Wright communicated with Superintendent Wright regarding the alleged harassment and discrimination. See id. at ¶¶ 23, 28–29. Richard Wright alleges that between June 11, 2021, and August 8, 2021, Superintendent

2

Wright directed school employees to compile as many instances of Richard Wright's alleged poor performance as possible. See id. at ¶ 31.

On August 9, 2021, Superintendent Wright told Richard Wright that he would recommend to the Board that Wright's employment be terminated because Wright insubordinately failed to complete all tasks that the Assistant Superintendent of Curriculum assigned to him on May 25, 2021. See id. at ¶ 32. By letter dated August 17, 2021, Richard Wright was suspended without pay. See id. at ¶ 33.

On October 4, 2021 the Board held a meeting at which the Board considered the Superintendent's termination recommendation. See id. at ¶ 35. At the meeting, Richard Wright discussed his discrimination, harassment, and retaliation complaints. See id. By letter dated October 15, 2021, the Board rejected the Superintendent's termination recommendation. See id. at ¶ 36.

On November 2, 2021, Superintendent Wright told Richard Wright that if he did not show up for work the next morning, he would be fired. See id. at ¶ 37. Richard Wright asked Superintendent Wright for details, and Superintendent Wright told Richard Wright that, "within a week or two after returning," Richard Wright "would be placed on an action plan that could result in his termination if not satisfied." Id. When Richard Wright asked for details about the action plan, Superintendent Wright declined to provide any details. Id. at ¶ 38. At the end of the day on November 2, 2021, Richard Wright resigned his employment because he believed the action plan was a setup to terminate him and because defendants' conduct caused Richard Wright to have PTSD. See id. at ¶ 39.

3

On February 15, 2022, Richard Wright filed an EEOC charge alleging race discrimination, retaliation, and a hostile work environment because of his race and protected activity. See id. at ¶ 40. On January 30, 2023, the EEOC issued a right to sue letter. See id. at ¶ 44.

On April 26, 2023, Richard Wright filed a seven-count complaint. See id. at ¶¶ 47–95. In count one, Richard Wright alleges a retaliation claim under 42 U.S.C. § 1981 against all defendants. See id. at ¶¶ 47–58. In count two, Richard Wright alleges a Title VII hostile work environment claim based on his race and protected activity against the Board. See id. at ¶¶ 59–61. In count three, Richard Wright alleges a Title VII race discrimination claim against the Board. See id. at ¶¶ 62–67. In count four, Richard Wright alleges a section 1981 race discrimination claim against the Board and Superintendent Wright. See id. at ¶¶ 68–70. In count five, Richard Wright alleges a Title VII retaliation claim against the Board. See id. at ¶¶ 71–78. In count six, Richard Wright alleges a section 1981 retaliation claim against the Board and Superintendent Wright. See id. at ¶¶ 79–83. In count seven, Richard Wright alleges an FMLA retaliation claim against the Board and Superintendent Wright. See id. at ¶¶ 84–95.

## II.

Defendants move to dismiss Richard Wright's complaint for failure to state a claim upon which relief can be granted. See [D.E. 15, 16]; Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at

4

302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to [the nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's factual allegations must "nudge[ ] [his] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court may also consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity." Goines, 822 F.3d at 166. Additionally, a court may take judicial notice of public records without converting the motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

## A.

In count one, Richard Wright alleges a section 1981 retaliation claim against all defendants for adverse employment actions taken against him after his May 2019 complaints of race discrimination and harassment. See Compl. ¶¶ 47–58. Defendants move to dismiss count one. As for the Board, it argues that Richard Wright's section 1981 claim fails to plausibly allege municipal

5

liability. See [D.E. 16] 13–14. As for all defendants, they argue that count one fails to plausibly allege adverse employment action or causation. See id. at 11–12; [D.E. 19] 3–4.

To state a section 1981 claim against a state actor under section 1983, a plaintiff must plausibly allege that an official policy or custom caused the violation. See Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986); Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691–92 (1978); Penley v. McDowell Cnty. Bd. of Educ., 876 F.3d 646, 653–54 (4th Cir. 2017); King v. Rubenstein, 825 F.3d 206, 223 (4th Cir. 2016); Love-Lane v. Martin, 355 F.3d 766, 782–83 (4th Cir. 2004); Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003); Minnick v. Cnty. of Currituck, 861 F. Supp. 2d 677, 681–83 (E.D.N.C. 2012); Ward v. Bd. of Educ., No. 5:06-CV-200, 2007 WL 9718581, at *3–4 (E.D.N.C. Aug. 9, 2007) (unpublished). There are four ways a plaintiff can establish municipal liability for a policy or custom:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifests deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law.

Lytle, 326 F.3d at 471 (cleaned up); see Penley, 876 F.3d at 653–54.

A violation results from a municipal entity's policy or custom if the violation resulted from "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell, 436 U.S. at 690; see City of St. Louis v. Praprotnik, 485 U.S. 112, 121–22 (1988). Even if a section 1983 plaintiff can identify the requisite final policymaking authority under state law, a municipality is not liable simply because a section 1983 plaintiff can "identify conduct attributable to the municipality." Riddick v. Sch. Bd., 238 F.3d 518, 524 (4th Cir. 2000); see Penley, 876 F.3d at 653–54; Love-Lane, 355 F.3d at 782–83. Instead, a section 1983 "plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the

6

injury alleged." Riddick, 238 F.3d at 524 (quotation and emphasis omitted); see Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 404 (1997); City of Canton v. Harris, 489 U.S. 378, 389–90 (1989); Penley, 876 F.3d at 653–54; Love-Lane, 355 F.3d at 782–83. Thus, a section 1983 plaintiff must show that "a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." Brown, 520 U.S. at 411; see Harris, 489 U.S. at 392; Riddick, 238 F.3d at 524.

"Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999), abrogated on other grounds by Kingsley v. Hendrickson, 576 U.S. 389 (2015). Deliberate indifference requires "proof that a municipal actor disregarded a known or obvious consequence of his action" or inaction. Brown, 520 U.S. at 410. Moreover, even if a section 1983 plaintiff can show the requisite culpability, a section 1983 plaintiff also must show "a direct causal link between the municipal action [or inaction] and the deprivation of federal rights." Id. at 404. Deliberate indifference and causation are separate requirements. See id.

Not every municipal official's action or inaction represents municipal policy. Rather, the inquiry focuses on whether the municipal official possessed final policymaking authority under state law concerning the action or inaction. See, e.g., McMillian v. Monroe Cnty., 520 U.S. 781, 785–86 (1997); Pembaur, 475 U.S. at 482; Penley, 876 F.3d at 653–54; King, 825 F.3d at 223; Love-Lane, 355 F.3d at 782–83; Riddick, 238 F.3d at 523.

Richard Wright argues that the Superintendent is the only school official with authority to recommend an employee's termination. See [D.E. 18] 4–5. This fact, however, does not suffice for municipal liability. See, e.g., McMillian, 520 U.S. at 785–86; Penley, 876 F.3d at 653–54; Love-Lane, 355 F.3d at 782–83. Although the Superintendent has the authority to suspend a person

7

without pay and recommend termination, the Board has the sole authority to terminate employment. "A county board of education cannot be held liable for personnel decisions over which it did not retain final review authority; that is, it is not liable for decisions committed to [the Superintendent's] discretion because there is no respondeat superior liability under section 1983." Penley, 876 F.3d at 653–54 (quotation omitted); see Love–Lane, 355 F.3d at 782–83. Moreover, Richard Wright does not plausibly allege that the Board participated in, sanctioned, or had final review authority over the alleged adverse employment actions that he says occurred between June 2019 and May 2021. See Compl. ¶ 52. Thus, the court dismisses count one against the Board. Furthermore, the court also dismisses count one against the individual defendants to the extent Richard Wright brings count one against the individual defendants in their official capacity. Such a claim duplicates the claim against the Board. See, e.g., Hafer v. Melo, 502 U.S. 21, 25 (1991); Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989); Kentucky v. Graham, 473 U.S. 159, 165–66 (1985).

Count one does not clearly state the capacity in which plaintiff is suing Superintendent Wright and Phillips. Having examined the nature of the plaintiff's claims, the relief sought, and the course of proceedings, the court concludes that Richard Wright is suing Superintendent Wright and Phillips in their personal capacities. See Biggs v. Meadows, 66 F.3d 56, 61 (4th Cir. 1995); Chandler v. Forsyth Technical Community College, 294 F. Supp. 3d 445, 448 n. 1 (M.D.N.C. 2018), aff'd, 739 F. App'x 203 (4th Cir. 2018) (per curiam) (unpublished).

Next, defendants argue that Richard Wright has failed to state a section 1981 retaliation claim against Superintendent Wright and Phillips in count one. Richard Wright cites no direct evidence of retaliation in his complaint. Instead, Richard Wright relies on the McDonnell Douglas burden-shifting framework. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–03 (1973); see, e.g., Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 281–84 (4th Cir. 2015) (en banc); Honor

**8**

v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 188 (4th Cir. 2004); Bryant v. Aiken Reg'l Med. Ctrs. Inc., 333 F.3d 536, 543–45 (4th Cir. 2003). To state a prima facie retaliation claim under section 1981, a plaintiff must plausibly allege that (1) he engaged in protected activity, (2) the defendant took an action against him that a reasonable employee would find materially adverse, and (3) a casual connection existed between the protected activity and the adverse employment action. See Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 67–70 (2006); Boyer-Liberto, 786 F.3d at 281–84; Holland v. Washington Homes, Inc., 487 F.3d 208, 218 (4th Cir. 2007). A retaliation claim requires "as an absolute precondition to suit that some adverse employment action have occurred." Bristow v. Daily Press, Inc., 770 F.2d 1251, 1255 (4th Cir. 1985); see Boyer-Liberto, 786 F.3d at 281; James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 375 (4th Cir. 2004). The adverse employment action requirement recognizes that Congress did not intend section 1981 to "provide redress for trivial discomforts endemic to employment." Boone v. Goldin, 178 F.3d 253, 256 (4th Cir. 1999). An adverse employment action is one that a reasonable employee would find materially adverse, which means it "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry., 548 U.S. at 68 (quotation omitted). The action must have a tangible effect on the terms and conditions of employment. See Holland, 487 F.3d at 219; James, 368 F.3d at 377; Boone, 178 F.3d at 256. An adverse action includes "one that 'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" Hoyle v. Freightliner, LLC, 650 F.3d 321, 337 (4th Cir. 2011) (quoting Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 761 (1998)).

Defendants argue that Richard Wright fails to allege adverse employment actions that are causally connected to the alleged protected activity in May 2019. See [D.E. 16] 14–15. Richard

9

Wright responds that his complaint contains five actions constituting adverse employment action concerning count one. See Compl. ¶ 52 ((1) the June 7, 2019 reprimand for allowing testing proctors to use cell phones; (2) the July 2019 denial of the promotion to principal; (3) not providing proctor manuals in the spring of 2021; (4) disconnecting computers and removing charging cables from the computers that were used for testing in May 2021; and (5) informing Richard Wright on May 25, 2021, that he would be reported for an accusation [i.e. failing to supervise] he knew to be false).

Of these five events, only the failure to promote Richard Wright to principal in July 2019 constitutes an adverse employment action that a reasonable employee would find materially adverse and that bears sufficient temporal proximity to the protected activity. See, e.g., Burlington N. & Santa Fe Ry., 548 U.S. at 67–70; Bryant, 333 F.3d at 544. The other alleged events are either temporally disconnected from his May 2019 protected activity or merely "trivial discomforts" commonplace in employment and do not tangibly affect the terms and conditions of employment. See, e.g., Burlington N. & Santa Fe Ry., 548 U.S. at 67–70; Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 274 (2001) (per curiam); Boone, 178 F.3d at 256.

Section 1981 imposes liability on an individual only for his or her own intentional actions that violate section 1981, such as a supervisor intentionally causing an employer to discriminate based on race. See Benjamin v. Sparks, 173 F. Supp. 3d 272, 283 (E.D.N.C. 2016) (collecting cases), aff'd, 986 F.3d 332 (4th Cir. 2021). In analyzing whether a plaintiff has plausibly alleged sufficient individual action to allow a section 1981 claim to proceed, courts examine whether the individual defendant had the authority to terminate employment or direct and approve the discrimination. See id. at 284; Atkins v. Winchester Homes, Civ. No. 06-278, 2007 WL 269083, at *9 (D. Md. Jan. 17, 2007) (unpublished).

Richard Wright alleges that Phillips "and/or" Superintendent Wright participated in the decision to not promote him to principal at a different school. See Compl. ¶ 18. Richard Wright, however, fails to plausibly allege that Phillips had any role in the decision to not promote Richard Wright to principal at a different school. Thus, the court dismisses the section 1981 retaliation claim in count one against Phillips. As for Superintendent Wright, the complaint makes no allegations about the hiring process for the 2019 principal opening. See [D.E. 16] 15. Nonetheless, William Wright was the Superintendent. Accordingly, Superintendent Wright plausibly had authority to promote Richard Wright, and count one survives against Superintendent Wright.

## B.

In count two, Richard Wright alleges a Title VII hostile work environment claim based on race and protected activity against the Board. See Compl. ¶¶ 59–61. The Board moves to dismiss this claim. The Board argues that Richard Wright's Title VII claims based on events before August 18, 2021, are subject to dismissal for failure to timely exhaust administrative remedies. See [D.E. 16] 5–6. The Board also argues that Richard Wright fails to plausibly allege conduct based on race or protected activity, conduct sufficiently severe or pervasive to alter Richard Wright's conditions of employment and create an abusive work environment, or conduct attributable to the employer. See [D.E. 16] 9–10.

## 1.

As for timeliness and the exhaustion of administrative remedies, before a person may file a claim in court under Title VII, the person must file a charge of discrimination with the EEOC. See 42 U.S.C. § 2000e-5(f)(1). An EEOC charge suffices "only if it is sufficiently precise to identify the parties, and to describe generally the action or practices complained of." Chacko v. Patuxent Inst., 429 F.3d 505, 508 (4th Cir. 2005) (quotation omitted); see Miles v. Dell, Inc., 429 F.3d 480, 491–92

11

(4th Cir. 2005). The content of the EEOC charge determines the scope of plaintiff's right to maintain a Title VII claim in court. See, e.g., Hentosh v. Old Dominion Univ., 767 F.3d 413, 416–17 (4th Cir. 2014), abrogated on other grounds by Fort Bend Cnty. v. Davis, 139 S. Ct. 1843 (2019); Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132–33 (4th Cir. 2002). "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996); see Sydnor v. Fairfax Cnty., 681 F.3d 591, 594 (4th Cir. 2012); Miles, 429 F.3d at 491–92; Bryant, 288 F.3d at 132–33. "Thus, a claim in formal litigation will generally be barred if the EEOC charge alleges discrimination on one basis, such as race, and the formal litigation claim alleges discrimination on a separate basis, such as sex." Jones v. Calvert Grp., Ltd., 551 F.3d 297, 300 (4th Cir. 2009), abrogated on other grounds by Davis, 139 S. Ct. 1843; see Bonds v. Leavitt, 629 F.3d 369, 379 (4th Cir. 2011). The same principle applies when a plaintiff files an EEOC charge with respect to one adverse employment action (such as a termination), but then seeks to expand the formal litigation claim to a separate adverse employment action (such as an earlier failure to promote). See Bonds, 629 F.3d at 379–80; Jones, 551 F.3d at 300; Chacko, 429 F.3d at 509; Miles, 429 F.3d at 491–92; Bryant, 288 F.3d at 132–33; Evans, 80 F.3d at 963. These principles concerning the scope of an EEOC charge ensure fair notice to an employer concerning a charge and permit the EEOC to investigate and (if appropriate) resolve the dispute without a lawsuit. See, e.g., Chacko, 429 F.3d at 508–09, 513; Miles, 429 F.3d at 491.

Generally, the time to file an EEOC charge accrues on the day the employee receives notice of the adverse employment action. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 110 (2002); Chardon v. Fernandez, 454 U.S. 6, 8 (1981) (per curiam); Del. State Coll. v. Ricks, 449 U.S.

12

250, 258 (1980); Smith v. Univ. of Md. Balt., 770 F. App'x 50, 50–51 (4th Cir. 2019) (per curiam) (unpublished); Hoggard v. Minetti, 872 F.2d 417, 1989 WL 27459, at *1 (4th Cir. 1989) (unpublished table decision). Thus, Richard Wright had to file his EEOC charge within 180 days of the alleged adverse employment action. See, e.g., Morgan, 536 U.S. at 109–15; EEOC v. Com. Off. Prods. Co., 486 U.S. 107, 110 (1988); Williams v. Giant Food Inc., 370 F.3d 423, 428 (4th Cir. 2004); Bryant, 288 F.3d at 132; Bratcher v. Pharm. Prod. Dev., Inc., 545 F. Supp. 2d 533, 539 (E.D.N.C. 2008); McDougal-Wilson v. Goodyear Tire & Rubber Co., 427 F. Supp. 2d 595, 606 n.3 (E.D.N.C. 2006). If a party fails to timely file an EEOC charge, the party "lose[s] the ability to recover for" that claim because the claim is not "actionable." Morgan, 536 U.S. at 110, 113. Only adverse employment actions "that took place within the timely filing period are actionable." Id. at 114; see Ledbetter v. Goodyear Tire & Rubber Co., 550 U.S. 618, 623–24 (2007), superseded by statute on other grounds, Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 123 Stat. 5; Williams, 370 F.3d at 428; Evans, 80 F.3d at 963; Cooper v. Smithfield Packing Inc., No. 5:10-CV-479, 2011 WL 3207912, at *3 (E.D.N.C. July 27, 2011) (unpublished).

On February 15, 2022, Richard Wright filed an EEOC charge. See Compl. ¶ 40. The Board argues that all Title VII claims based on events before August 18, 2021, are time barred, which would include Richard Wright's August 17, 2021 suspension if he received the letter on that date. See [D.E. 16] 5–6. Richard Wright responds that at the motion to dismiss stage the court must apply the three-day mailbox rule under Federal Rule of Civil Procedure 6(d) and assume that he received the letter on August 20, 2021, thus bringing the suspension within the 180-day window. See [D.E. 18] 9–10. The Board replies that Richard Wright's complaint belies this argument by discussing his suspension and specifically referring to "on or about August 17" and twice stating "on August 17." See [D.E. 19] 1–2; Compl. ¶¶ 33, 64, 66, 69, 74, 77, 81, 83.

13

The 180-day time period bars any Title VII claims based on discrete acts of discrimination in June 2019, the summer of 2019, May 2021, June 2021, and August 9, 2021. See, e.g., Morgan, 536 U.S. at 109–15. Richard Wright also concedes that the August 9, 2021 warnings fall outside the 180-day window. See [D.E. 18] 19 n.4. Accordingly, Richard Wright anchors his Title VII claims to the August 17, 2021 suspension letter and events after that date. See id. Thus, the court dismisses any Title VII claim to the extent it stems from discrete acts of discrimination on or before August 17, 2021.

Viewing the complaint and reasonable inferences in the light most favorable to Richard Wright, and with the date of receipt of the August 17, 2021 letter in dispute (for now), the court applies the three-day mailbox rule. See, e.g., Baldwin Cnty. Welcome Ctr. v. Brown, 466 U.S. 147, 148 n.1 (1984) (per curiam); Seitzinger v. Reading Hosp. & Med. Ctr., 165 F.3d 236, 239 (3d Cir. 1999); Stewart v. Johnson, 125 F. Supp. 3d 554, 560 (M.D.N.C. 2015); Harris v. Gilbarco Veeder Root, No. 1:08CV803, 2009 WL 806577, *3 (M.D.N.C. Mar. 26, 2009) (unpublished); Mims v. Thompson Cadillac-Oldsmobile, Inc., No. 5:04-cv-237, 2006 WL 8438576, *8 (E.D.N.C. Mar. 16, 2006) (unpublished).[1] Thus, the court declines to dismiss Richard Wright's Title VII claims concerning his August 17, 2021 suspension.[2]

---

[1] Although the old section (e) in Rule 6 no longer exists, courts still apply the three-day mailbox rule in Rule 6(d) to the 90 day EEOC filing period. See, e.g., Silla v. Holdings Acquisition Co. LP, No. 20-3556, 2021 WL 4206169, at *2 (3d Cir. Sept. 16, 2021) (per curiam) (unpublished); Stewart, 125 F. Supp. 3d at 560 n.7.

[2] If discovery reveals that the letter was emailed instead of transmitted by mail, then receipt would be deemed to occur on August 17, and the three-day mailbox rule would not apply. See, e.g., Paniconi v. Abington Hosp.-Jefferson Health, 604 F. Supp. 3d 290, 293 (E.D. Pa. 2022); Moses v. Home Depot Inc., Civ. No. 16-2400, 2017 WL 2784710, at *6 (D.N.J. June 27, 2017) (unpublished).

14

## 2.

As for the timeliness of Richard Wright's Title VII hostile work environment claim in count two, the Board argues that Richard Wright confuses his hostile work environment claim with his other Title VII claims involving discrete acts under Morgan. See [D.E. 19] 2; Morgan, 536 U.S. at 109–15. Richard Wright disagrees and cites the November 2, 2021 action plan and threats of impending termination to argue that Title VII his hostile work environment claim is timely. See Compl. ¶ 60; [D.E. 18] 12; Morgan, 536 U.S. 109–15; McDougal-Wilson, 427 F. Supp. 2d at 616.

Under Morgan, a court sometimes may consider events beyond the 180–day charge-filing period when analyzing a hostile work environment claim. See Morgan, 536 U.S. at 115–21. In Morgan, the Court noted that a "hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" Id. at 117 (quoting 42 U.S.C. § 2000e-5(e)(1)). In Morgan, the Court held that so long as a single act "contributing to the [hostile work environment] claim occurs within the filing period, the entire time period of the hostile environment may be considered" for the purposes of determining liability. Id. In order for a court to permit a party pursuing a hostile work environment claim to reach beyond the charge-filing period (e.g., the 180-day period applicable in this case), the court must examine whether the acts beyond the filing period are component acts of a single hostile work environment claim. Thus, a court must examine whether the "pre- and post-limitations period incidents involved the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers." Id. at 120 (quotation and alteration omitted); McDougal-Wilson, 427 F. Supp. 2d at 616.

Here, the court need not determine whether Richard Wright's action plan initiated after a return from suspension forms part of the same actionable hostile work environment claim that

15

Wright alleges before August 2021. Even if it does, Richard Wright fails to plausibly allege the required elements to sustain a Title VII hostile work environment claim against the Board.

To demonstrate a hostile work environment claim, an employee must prove that (1) he experienced unwelcome conduct, (2) the conduct was based on a protected characteristic under Title VII, (3) the conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere, and (4) the conduct is imputable to the employer. See, e.g., Laurent-Workman v. Wormuth, 54 F.4th 201, 210–12 (4th Cir. 2022); Chapman v. Oakland Living Ctr., Inc., 48 F.4th 222, 229 (4th Cir. 2022); Perkins v. Int'l Paper Co., 936 F.3d 196, 207–08 (4th Cir. 2019); Parker v. Reema Consulting Servs., Inc., 915 F.3d 297, 302 (4th Cir. 2019); Boyer-Liberto, 786 F.3d at 277; Okoli v. City of Balt., 648 F.3d 216, 220–21 (4th Cir. 2011); E.E.O.C. v. Fairbrook Med. Clinic, P. A., 609 F.3d 320, 327 (4th Cir. 2010); Ziskie v. Mineta, 547 F.3d 220, 224 (4th Cir. 2008); Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 331 (4th Cir. 2003) (en banc); Coleman v. Altec, Inc., No. 5:16-CV-954, 2018 WL 4289610, at *3 (E.D.N.C. Sept. 7, 2018) (unpublished); Brown v. Wake Cnty. Gov't, No. 5:16-CV-806, 2017 WL 2982971, at *5 (E.D.N.C. July 12, 2017) (unpublished). An employee also must show that his protected characteristic was the "but for" cause of the alleged harassment. See, e.g., Gilliam v. S.C. Dep't of Juv. Just., 474 F.3d 134, 142 (4th Cir. 2007).

To determine whether conduct was sufficiently severe or pervasive to alter the employee's terms and conditions of employment and create an abusive working environment based on a protected characteristic, the court examines the allegations both subjectively and objectively. See, e.g., Harris v. Forklift Sys., Inc., 510 U.S. 17, 21–22 (1993). First, the employee must subjectively consider the conduct to be sufficiently severe or pervasive as to alter his conditions of employment. See, e.g., Breeden, 532 U.S. at 270–71; Faragher v. City of Boca Raton, 524 U.S. 775, 787–88

16

(1998); Boyer-Liberto, 786 F.3d at 277. Second, a court views the conduct from the perspective of a reasonable person in the employee's position to determine whether it is objectively severe or pervasive. See, e.g., Breeden, 532 U.S. at 271; Faragher, 524 U.S. at 787–88; Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81–82 (1998); Boyer-Liberto, 786 F.3d at 277.

The objective component helps courts "to police the baseline for hostile environment claims." Mendoza v. Borden, Inc., 195 F.3d 1238, 1244 (11th Cir. 1999) (en banc) (quotation omitted). The court considers all the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Forklift Sys., Inc., 510 U.S. at 23; see Parker, 915 F.3d at 304. The conduct must be severe or pervasive to be actionable. See Forklift Sys., Inc., 510 U.S. at 23; Faragher, 524 U.S. at 787–88; Boyer-Liberto, 786 F.3d at 277–78. Title VII does not create "a general civility code for the American workplace." Oncale, 523 U.S. at 80; see Irani v. Palmetto Health, 767 F. App'x 399, 416 (4th Cir. 2019) (per curiam) (unpublished). Rather, the "conduct must . . . amount to a change in the terms and conditions of employment." Faragher, 524 U.S. at 788; see Boyer-Liberto, 786 F.3d at 277–81. Simple teasing, sporadic rude language, offhand comments, jokes related to a protected status, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment. See Burlington N. & Santa Fe Ry., 548 U.S. at 68–69; Breeden, 532 U.S. at 270–71; Faragher, 524 U.S. at 788; cf. Chapman, 48 F.4th at 228–34; Boyer-Liberto, 786 F.3d at 277–81. Likewise, mere rude or insensitive treatment cannot sustain a hostile work environment claim. See, e.g., Bonds, 629 F.3d at 385–86; Baqir v. Principi, 434 F.3d 733, 746–47 (4th Cir. 2006), abrogated on other grounds by Gross v. FBL Fin. Servs., Inc., 557 U.S. 167 (2009); see also Breeden, 532 U.S. at 270–71; Faragher, 524 U.S. at 787–88; Oncale, 523 U.S. at 81–82; cf.

17

Chapman, 48 F.4th at 228–34; Boyer-Liberto, 786 F.3d at 277–81; Okoli, 648 F.3d at 220–22. "The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by simple recitation of the words used or the physical acts performed." Oncale, 523 U.S. at 81–82. "Common sense, and an appropriate sensitivity to social context," will enable courts to distinguish between teasing, distasteful jokes, sporadic rude language, vulgarity, stupidity, offhand comments, and insensitive treatment and "conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive" based on a protected characteristic. Id. at 82.

Although hostile work environment claims often involve repeated conduct, an "isolated incident of harassment can amount to discriminatory changes in the terms and conditions of employment, if that incident is extremely serious." Boyer-Liberto, 786 F.3d at 277 (quotations and alterations omitted); see Pryor v. United Air Lines, Inc., 791 F.3d 488, 496 (4th Cir. 2015); Okoli, 648 F.3d at 220 & n.5. And while the relevant conduct sometimes occurs over a series of days, weeks, months, or even perhaps years, "large temporal gaps between allegations undermine a hostile-work-environment claim." McIver v. Bridgestone Ams., Inc., 42 F.4th 398, 408 (4th Cir. 2022) (quotations omitted).

Assuming without deciding that the events after August 17, 2021 qualify as part of the same alleged hostile work environment, Richard Wright cites 14 separate allegations in the complaint, 12 involving him, that he says plausibly allege the element of severe or pervasive conduct. See [D.E. 18] 13 & n2. The allegations are:

1. conclusory allegations of harassment of another white teacher by Phillips, Compl. ¶ 46(c);
2. allegations that Richard Wright discussed with Superintendent Wright his concerns about harassment from Phillips, Compl. ¶ 17;

18

3. being reprimanded for allowing a proctor to use a cell phone even though Phillips failed to provide working clocks, Compl. ¶¶ 15, 18(a);
4. not being selected for a promotion, Compl. ¶¶ 18(b), 52(b);
5. conclusory allegations that a white transportation director was demoted without cause, Compl. ¶ 46(d);
6. being pulled away from time sensitive duties for meetings and receiving a heavier workload, Compl. ¶ 15(d)–(e);
7. not being provided with proctor manuals, Compl. ¶ 52(c);
8. alleged disconnecting of computer equipment used for testing, Compl. ¶ 15(b);
9. being informed that he would be reported for failure to properly supervise testing, Compl. ¶ 18(c);
10. being assigned additional tasks to complete before the end of a workday, Compl. ¶ 19;
11. having evidence of alleged poor performance gathered against him, Compl. ¶ 31;
12. being told of a recommendation for his termination, Compl. ¶ 32;
13. being informed of his suspension without pay, Compl. ¶ 33; and
14. being told of a performance improvement plan and possibility of termination if the plan was not satisfied, Compl. ¶¶ 37–38.

Even viewing these allegations in a light most favorable to Richard Wright, he fails to allege a hostile work environment claim under Title VII. The temporal gaps between each of these disparate instances erode the notion that they constitute severe or pervasive conduct. See, e.g., McIver, 42 F.4th at 408. Furthermore, Richard Wright does not plausibly allege that race or protected activity was the motivating factor behind these actions. See, e.g., id. at 409 ("[P]laintiff cannot rely on her own conjecture to impute a racial character to what appears to be neutral harassment." (quotation omitted)); Hawkins v. PepsiCo, Inc., 203 F.3d 274, 280–81 (4th Cir. 2000); Settle v. Baltimore Cnty., 34 F. Supp. 2d 969, 991 (D. Md. 1999), aff'd sub nom. Harris v. Earp, 203 F.3d 820 (4th Cir. 2000); Copeland v. Sears, Roebuck & Co., 25 F. Supp. 2d 412, 418 (S.D.N.Y. 1998). Notably, Richard Wright does not allege any racially derogatory comments, jokes, or acts similar to what the Court described in Morgan that connect the alleged harassment to race or protected activity. See, e.g., Morgan, 536 U.S. at 120–21. The alleged conduct simply does not rise to the level of severity or pervasiveness necessary to alter the terms and conditions of employment

19

to state a hostile work environment claim under Title VII. See, e.g., Breeden, 532 U.S. at 270–71; Oncale, 523 U.S. at 81; Baqir, 434 F.3d at 746–47; Tims v. Carolinas Healthcare Sys., 983 F. Supp. 2d 675, 681 (W.D.N.C. 2013). Thus, the court dismisses Richard Wright's Title VII hostile work environment claim in count two.

## C.

In count three, Richard Wright alleges a Title VII race discrimination claim against the Board concerning his August 17, 2021 suspension without pay. See Compl. ¶¶ 62–67. The elements of a prima facie case of race discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class. See, e.g., White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004). Although a plaintiff need not plead a prima facie case of discrimination to survive a motion to dismiss, Rule 12(b)(6) requires the court to examine whether the plaintiff plausibly alleges a violation of Title VII "above a speculative level." Bing v. Brivo Sys., LLC, 959 F.3d 605, 616–17 (4th Cir. 2020) (quotation omitted); see Swierkiewicz v. Sorema N.A., 534 U.S. 506, 515 (2002); Coleman, 626 F.3d at 190.

The Board moves to dismiss count three as time barred. See [D.E. 16] 5. As discussed, the court rejects the Board's timeliness arguments at this stage of the case.

The Board also argues that the court should dismiss count three because Richard Wright fails to plausibly allege an adverse employment action. See id. at 6–9; [D.E. 19] 2 n.1. The court rejects the Board's argument that a suspension without pay is not an adverse employment action. In Burlington Northern, the Court held that it was reasonable for a jury to conclude that a 37-day suspension without pay, even with full back pay, was materially adverse. See Burlington N. & Santa Fe Ry. Co., 548 U.S. at 71–73; see also id. at 79–80 (Alito, J., concurring) (agreeing that a

20

suspension without pay, even with back pay, is an adverse employment action for both discrimination and retaliation claims, even under his different reading of the statute's requirements for retaliation claims). Thus, Richard Wright plausibly alleges a materially adverse employment action in count three.

Next, the Board argues that Richard Wright fails to plausibly allege race discrimination due to the absence of similarly situated comparators. See [D.E. 16] 7–9. A plaintiff can prove that his discharge occurred under circumstances giving rise to an inference of race discrimination by demonstrating that the employer treated similarly situated comparators, who were not members of plaintiff's protected class, differently. See Laing v. Fed. Express Corp., 703 F.3d 713, 719 (4th Cir. 2013); Lightner v. City of Wilmington, 545 F.3d 260, 265 (4th Cir. 2008). A plaintiff need not cite a comparator to establish the fourth element, but if he does, he must demonstrate that similarly situated employees were not treated equally. See Burdine, 450 U.S. at 258; McDonnell Douglas, 411 U.S. at 804; Haywood v. Locke, 387 F. App'x 355, 359 (4th Cir. 2010) (per curiam) (unpublished). Vague comparator statements do not suffice to establish the fourth element. See Haywood, 387 F. App'x at 359–60; Lightner, 545 F.3d at 265.

To establish a valid comparator, the plaintiff must show that he and the comparator were "similar in all relevant respects." Haywood, 387 F. App'x at 359; see Smith v. Stratus Comput., Inc., 40 F.3d 11, 17 (1st Cir. 1994); Barski v. Cyberdata Techs., Inc., No. 8:17-cv-3593, 2020 WL 4471827, at *6 (D. Md. Aug. 4, 2020) (unpublished); Wilson v. City of Chesapeake, 290 F. Supp. 3d 444, 457 (E.D. Va. 2018), aff'd, 738 F. App'x 169 (4th Cir. 2018) (per curiam) (unpublished). The comparator must have "dealt with the same supervisor, . . . been subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Mitchell v. Toledo

21

Hosp., 964 F.2d 577, 583 (6th Cir. 1992); see Haynes v. Waste Connections, Inc., 922 F.3d 219, 223–24 (4th Cir. 2019); Haywood, 387 F. App'x at 359; Cook v. CSX Transp. Corp., 988 F.2d 507, 511 (4th Cir. 1993); Wilson, 290 F. Supp. 3d at 457–58. However, "a comparison between similar employees will never involve precisely the same set of work-related offenses occurring over the same period of time and under the same sets of circumstances." Haynes, 922 F.3d at 223 (quotation omitted); see also Cook, 988 F.2d at 511; Moore v. City of Charlotte, 754 F.2d 1100, 1107 (4th Cir. 1985). In the disciplinary context, "[t]he most important variables . . . and the most likely sources of different but nondiscriminatory treatment, are the nature of the offenses committed and the nature of the punishments imposed." Moore, 754 F.2d at 1105.

Richard Wright cites four pieces of comparator evidence and "general patterns of racial discrimination" to seek to allege an inference of race discrimination. See Compl. ¶¶ 45–46. Specifically, Richard Wright cites (1) not terminating two African American teachers who had inappropriate relationships with underage students in 2014 and 2017, (2) not terminating an African American teacher who interfered with students' First Amendment rights in 2019, (3) not terminating an African American employee who negligently supervised a diesel fuel spill in 2019, (4) and not terminating an African American high school assistant principal who had an extra-marital affair with a co-worker in 2021. See Compl. ¶ 45.

Richard Wright's comparator evidence fails to create an inference of race discrimination above a speculative level. In Lightner, plaintiff was a Division Commander of the Police Force Professional Standards Division who used as comparator evidence an African American female officer who was not a member of the Professional Standards Division, or even an Acting Division Commander, at the time of her misconduct. See Lightner, 545 F.3d at 264–65. In holding this evidence insufficient to infer race or sex discrimination, the Fourth Circuit observed that "[t]he

22

similarity between comparators and the seriousness of their respective offenses must be clearly established in order to be meaningful." Id. at 265. Richard Wright's comparator evidence suffers similar deficiencies. Richard Wright's proffered comparators fail because he offers only one comparator who was an assistant principal near in time to his allegations of race discrimination, and his example of an extra marital affair provides no material comparison to job performance issues. In a disciplinary context, the most important comparison is "the nature of the offenses committed." Moore, 754 F.2d at 1105; see Lightner, 545 F.3d at 265.

As for Richard Wright's allegations concerning general patterns of race discrimination, Richard Wright only makes conclusory allegations concerning several white employees who resigned, were terminated, or were demoted. See Compl. ¶ 46. As in McCleary-Evans, where the plaintiff relied on "speculation as to why two non-Black candidates were selected to fill the positions" instead of the black plaintiff, Richard Wright relies only on speculation that these white employees are no longer employed due to race discrimination. McCleary-Evans v. Md. Dep't of Transp., 780 F.3d 582, 585–86 (4th Cir. 2015) (quotation omitted). "While the allegation that non-Black decisionmakers hired non-Black applicants instead of plaintiff is consistent with discrimination, it does not alone support a reasonable inference that the decisionmakers were motivated by bias." Id. at 586 (emphasis in original). The same conclusion applies to a white employee alleging that non-white decisionmakers promoted or did not discipline non-white employees.

Richard Wright responds that his comparator evidence, combined with an alleged general pattern of discrimination against other white employees, gets his race discrimination claim across the Rule 12(b)(6) line. See [D.E. 18] 11, 17–18. Although Richard Wright does not attempt to solely rely on a single comparator as the plaintiff did in Mcleary-Evans, stacking conclusory

23

allegations of hostility to non-black employees does not get Richard Wright across the line. Thus, the court dismisses count three for failure to plausibly allege race discrimination.

### D.

In count four, Richard Wright alleges a section 1981 race discrimination claim against the Board and Superintendent Wright based on the same conduct alleged in count three, and the events before August 17, 2021. See id. at ¶¶ 68–70. In count four, Richard Wright limits his section 1981 race discrimination claims to the July 2019 failure to promote and the August 17, 2021 suspension without pay. See [D.E. 18] 16 n.3. Defendants move to dismiss this count and largely repeat their arguments about count three. See [D.E. 16] 11–13. As discussed concerning count three, Richard Wright fails to plausibly allege race discrimination in count four. Thus, the court dismisses count four.

### E.

In count five, Richard Wright alleges a Title VII retaliation claim against the Board. See Compl. at ¶¶ 71–78. The Board moves to dismiss this claim and argues that Richard Wright fails to allege adverse employment actions or causation. See [D.E. 16] 11.

To state a prima facie claim for retaliation in violation of Title VII, an employee must show that (1) he engaged in protected activity, (2) his employer took an action against him that a reasonable employee would find materially adverse, and (3) a casual connection existed between the protected activity and the adverse employment action. See Burlington N. & Santa Fe Ry., 548 U.S. at 67–70; Boyer–Liberto, 786 F.3d at 281–84.

A party can prove causation in two ways: (1) by "show[ing] that the adverse act bears sufficient temporal proximity to the protected activity," or (2) by showing "the existence of facts that suggest that the adverse action occurred because of the protected activity," or a combination of the

24

two. Smith v. CSRA, 12 F.4th 396, 417 (4th Cir. 2021) (cleaned up); see Laurent-Workman, 54 F.4th at 218–19. "[T]emporal proximity between an employer's knowledge of protected activity and an adverse employment action" may establish causation only if it is "very close." Breeden, 532 U.S. at 273 (quotation omitted). Additionally, when there is other evidence of intervening events between the protected activity and the adverse action, or natural decision points for employment decisions, temporal causation may be extended. See King v. Rumsfeld, 328 F.3d 145, 151 n.5 (4th Cir. 2003).

Richard Wright argues that he engaged in protected activity approximately 53 and 68 days before the August 17, 2021 suspension letter, and that he has plausibly alleged causation. See [D.E. 18] 19. Richard Wright's allegations nudge his retaliation claim across the Rule 12(b)(6) line. As in King, the August time-frame was a natural decision point for school personnel employment decisions and Wright's allegations of an ongoing investigation into his employment record over the summer, at the direction of Superintendent Wright, plausibly provide a sufficient temporal link to his May and June 2021 protected activity. See, e.g., King, 328 F.3d at 151 n.5; Compl. ¶¶ 26–33. Thus, the court denies defendants' motion to dismiss Richard Wright's Title VII retaliation claim in count five.

F.

In count six, Richard Wright alleges a section 1981 retaliation claim against the Board and Superintendent Wright. See Compl. ¶¶ 79–83. Defendants argue that the court must dismiss this claim against the Board for failure to plausibly allege a policy or custom and that the allegations fail to plausibly plead the required elements for retaliation. See [D.E. 16] 13–14; [D.E. 19] 3–4.

As discussed, Richard Wright fails to plausibly allege that the Board "participated in, or otherwise condoned" the August 17, 2021, suspension without pay. See, e.g., Love-Lane, 355 F.3d at 782–83. Thus, the court dismisses count six against the Board. As for the section 1981 retaliation

25

claim in count six against Superintendent Wright, the court denies the motion to dismiss count six because Richard Wright plausibly alleges a section 1981 retaliation claim against Superintendent Wright.

G.

In count seven, Richard Wright alleges an FMLA retaliation claim against the Board and Superintendent Wright. See Compl. ¶¶ 84–95. Defendants move to dismiss the claim and argue that Richard Wright fails to allege adverse employment actions or causation. See [D.E. 16] 15–16.

The FMLA prohibits employers from discriminating against an employee for exercising his FMLA rights. See 29 U.S.C. § 2615(a)(2). Courts analyze FMLA retaliation claims under the McDonnell Douglas burden-shifting framework. See Hannah P. v. Coats, 916 F.3d 327, 347 (4th Cir. 2019); Laing, 703 F.3d at 717. To establish a prima facie case of FMLA retaliation, a plaintiff must show that "(1) [he] engaged in a protected activity; (2) [his] employer took an adverse employment action against [him]; and (3) there was a causal link between the two events." Adams v. Anne Arundel Cnty. Pub. Schs., 789 F.3d 422, 429 (4th Cir. 2015) (quotation omitted).

The August 17, 2021 suspension without pay constitutes adverse employment action. Furthermore, Richard Wright plausibly alleges causation with his FMLA protected leave from May 25, 2021, to June 11, 2021. See Compl. ¶¶ 84–95; see, e.g., King, 328 F.3d at 151 n.5. Thus, the court denies defendants' motion to dismiss count seven.

III.

In sum, the court GRANTS IN PART defendant's motion to dismiss [D.E. 15] and DISMISSES WITHOUT PREJUDICE counts two, three, and four. The retaliation claims in counts one, five, six, and seven survive the motion to dismiss. The court GRANTS plaintiff's request to amend this complaint. Plaintiff may file an amended complaint no later than January 22, 2024. The

26

court DISMISSES WITHOUT PREJUDICE defendant Phillips from count one. The court DISMISSES WITHOUT PREJUDICE the Board from counts one and six.

SO ORDERED. This 8 day of January, 2024.

J. Dever

JAMES C. DEVER III
United States District Judge